# United States Court of Appeals
## For the First Circuit

No. 00-1707

FRANCO MORALES; GLORIA VILLARUBIO;
CONJUGAL PARTNERSHIP MORALES-VILLARUBIO,

Plaintiffs, Appellants,

v.

A. C. ORSSLEFF'S EFTF,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Harry A. Ezratty for appellants.
William A. Graffam, with whom Patricia A. Garrity was on
brief, for appellee.

April 11, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** This is a maritime tort action in which plaintiff-appellant Franco Morales, a San Juan harbor pilot, appeals from a summary judgment in favor of defendant-appellee, owner of the vessel M/V Malene. Morales seeks damages for an injury occasioned by a fall as he was disembarking from the Malene and boarding the plaintiff's pilot boat after guiding the Malene out of San Juan Harbor. The complaint alleged that defendant was negligent for failing to "make a lee," i.e., to turn the Malene perpendicular to the waves as requested in order to minimize pitching on the leeward side of the boat from which plaintiff was disembarking. Morales also claimed that the rope ladder used to exit the Malene was not in a safe position, and that the area was not properly illuminated. On the basis of facts deemed admitted because they were not controverted by the plaintiff, and his own deposition testimony, the district court held that the sole cause of the accident was Morales' own negligence. We affirm.

This case is a lesson in summary judgment practice. As might be expected, the various motion papers, memoranda, exhibits, affidavits, and depositions of parties, witnesses, and experts produced an appendix of two thick volumes. In such a case, the filing of a motion for summary judgment signals a formidable search for a genuine issue of material fact. If this

is not to impose the daunting burden of seeking a needle in a haystack, the court needs help from counsel.  Almost two decades ago, we confessed our increasing "frustration [with] the more and more typical phenomenon . . . of a district court having to decide a motion for summary judgment without the assistance the court should expect from counsel."  Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 927 (1st Cir. 1983).  We encouraged district courts to adopt "anti-ferreting" rules, which warn parties opposing summary judgment that, to preclude judgment as a matter of law, they must identify factual issues buttressed by record citations.  "[O]nce so warned," we added, "a party's failure to comply would, where appropriate, be grounds for judgment against that party."  Id. at 931.

The district of Puerto Rico has such a rule, Local Rule 311.12, which in relevant part requires a party opposing summary judgment to submit "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record."  D.P.L.R. 311.12.  We have recently reiterated, with reference to this particular rule, that "parties ignore [it] at their own peril," and that "failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented

-4-

in the movant's statement of undisputed facts admitted." <u>Ruiz Rivera</u> v. <u>Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (citing prior cases).

Along with its motion for summary judgment, defendant-appellee submitted to the district court, in accordance with the local rule, a statement meticulously enumerating some three dozen uncontested facts. Plaintiff responded by filing contemporaneously two separate documents, his own designation of uncontested facts and an opposition to defendant's statement of uncontested facts, both of which were deficient.

Two thirds of the items listed in plaintiff's designation of uncontested facts are either completely unsupported by citations to the record, or else only reference an entire deposition or statement without page citations. There is not a single record citation in plaintiff's opposition to defendant's statement of uncontested facts. Plaintiff accepted two-thirds of the proffered statements. Among those to which the plaintiff objected, the district court found none sufficient to raise a triable issue, and accordingly granted summary judgment in favor of defendant.

The district court found that by conceding facts proffered by the defendant, and then lending support to those uncontroverted facts in his deposition, Morales admitted that he

alone was at fault for his injury. Although plaintiff contested the general proposition that harbor pilots take over the command of vessels once aboard, he accepted defendant's proffered fact number 8, which stated that, on this occasion, Morales gave all instructions and navigational orders for maneuvering the Malene "up to and including the positioning of the vessel for his disembarkation." He also accepted number 30, defendant's characterization of the critical moment: "[Morales] stepped from the ladder into the pilot boat <u>when he deemed it safe to do so</u>." This admission was based on Morales' own deposition testimony, specifically referenced by defendant in number 30:

Q. [H]ow long a time was it that you waited at the ladder for the captain to make this turn that you had asked him to make?

A. It would have been three or five seconds, five minutes. Not seconds; minutes.
                          * * *
Q. [D]id the MALENE actually start the turn to the left, as you had asked them?

A. As I asked, and he would run back in and I guess he would put more w[heel] to the ship and the ship would have come down. By that time, not only would the ship help the swell, but the swell would ease down with the boat and as the boat came up, I saw that it was safe enough for me to grab the boat and release the ladder and that's what I did. It so happened that[,] as I let go of the ladder[,] the boat just went down, the swell went down, and I went down with it.

Thus, Morales' deposition testimony reflecting his own judgment about the conditions for disembarkation foreclosed any possibility of recovery from defendant.

On appeal, recognizing the damning nature of his own testimony, Morales points to other evidence, which, he argues, contradicts the version of events articulated in his deposition and thereby creates a triable issue for a jury. He cites two items, neither of which we find persuasive.

The first, deposition testimony of another harbor pilot, Montes, who claimed to have seen the Malene heading due north out to sea, suggests that the vessel at some unidentified time was not turning to shelter the leeward side as requested by Morales. But this fact, even if true, does nothing to contradict the uncontested facts that Morales was in charge of the Malene's course during the positioning maneuver and that he and he alone decided when to jump. Furthermore, in his submissions to the district court, plaintiff made only a general reference to Montes' testimony without pinpointing where in that 89-page deposition support for that reference could be found. This is precisely the situation that Local Rule 311.12 seeks to avoid. As the district court generously observed, although plaintiff did not fully comply with Local Rule 311.12, that deficiency was "not at all outcome determinative in the instant

case."  In this circumstance, we would not be inclined to give such hitherto unreferenced testimony dispositive effect on appeal.  Forgiving plaintiff's noncompliance with the local rule would undercut our efforts over the years to enlist counsel as aides to the court.

The other evidence from which plaintiff purports to raise an issue of fact is Morales' affidavit, which was filed in opposition to defendant's motion for summary judgment some twenty months after his deposition, and which contradicts his prior deposition testimony.  In the affidavit, Morales averred that the Malene turned ten degrees to port as requested, but that was not enough.  He returned from the ladder to the deck and shouted to the captain to turn more to port.  Then, the affidavit states:

> I waited some time and returned to the ladder.  I still did not have what I asked for.  I told the men standing by, [sic] about my problem.  At this time no one was complying with my requests.  I had no choice but to try to board the pilot boat under these conditions.  I waited for the correct moment to go into the pilot boat.  I would say it took me about a half hour from the time I left the wheelhouse until I was finally able to get on to the pilot boat.  That was the time I injured myself.

The disparity of views between those expressed in this affidavit and those in Morales' earlier deposition is dramatic.  In his deposition, Morales testified that he leaped when he thought it was safe.  The affidavit, by contrast, describes him

as having "no choice" but to jump when he did.  The distinct implication of Morales' deposition testimony was that the ship was responding to his instructions; the affidavit states that there was absolutely no compliance.

These disparities, however, do not create a jury question.  We have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit. Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); see also Torres v. E.I. DuPont De Nemours & Co., 219 F.3d 13, 20-21 (1st Cir. 2000).  We adhere to that practice now.

We therefore conclude as a matter of law that the defendant was not at all negligent in its maneuvering of the vessel during plaintiff's disembarkation.  The two remaining issues, ladder position and illumination, are likewise precluded by plaintiff's own account.  Morales admitted that there was nothing physically wrong with the ladder and that it was secured firmly.  He did not contend that a lack of visibility on the part of the harbor pilot had anything to do with the accident.

Nor does he argue that improper lighting in any way affected his decision when to disembark. There is simply no basis to conclude that the ladder or visibility had anything to do with the accident.

Appellant devotes a surprising amount of space in his brief to arguing that the court improperly relied on the opinion evidence of his former expert, who subsequently gave damaging testimony supporting the defendant. Although this testimony was also not controverted, it played no significant part in our analysis.

Affirmed.