**EUROMODAS, INC., Plaintiff,**

v.

**ZANELLA, LTD., et al., Defendants.**

**Civil No. 99–2428(JAG).**

United States District Court,
D. Puerto Rico.

March 20, 2003.

Salvador J. Antonetti–Stutts, Director, Commonwealth Department of Justice, Armando Llorens, McConnell Valdes, San Juan, PR, for plaintiffs.

Lawrence Fechner, Jaffe, Segal and Ross, New York City, Edna Hernandez–Arroyo, Avila, Martinez & Hernandez, Ignacio Rivera–Cordero, Rivera & Montalvo, Jose L. Barreto–Rampolla, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

In this action, brought under Section 1 [1] of the Sherman Antitrust Act, 15 U.S.C. § 1, plaintiff Euromodas, Inc. ("Euromodas") alleges that defendant Zanella, LTD. ("Zanella") terminated Euromodas as one of its retailers, in furtherance of a price fixing conspiracy with another competing retailer, defendant Clubman, Inc. ("Clubman"). Presently before the Court are the parties's cross-motions for summary judgment. Zanella filed a motion for summary judgment on August 19, 2002, which was later amended. (Dockets Nos. 73 and 77.) Plaintiff Euromodas opposed said motion on September 5, 2002. (Docket No. 84.) Thereafter, Euromodas filed a motion for summary judgment (Docket No. 93), which was duly opposed by Zanella. (Docket No. 113.) Defendant Clubman has joined both Zanella's motion for summary judgment and its opposition to Euromodas's motion for summary judgment. (Docket Nos. 78 and 114.) After a careful review of the record, the Court finds that plaintiff has failed to present evidence that would sustain an antitrust violation under 15 U.S.C. § 1, and therefore grants summary judgment in favor of defendants.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of the suit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir. 1995); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" *Suarez v. Pueblo International, Inc.,* 229 F.3d 49, 53 (1st Cir. 2000) (citing *Medina Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)).

---

**1.** Plaintiff brought, and later withdrew, a section 2 claim.

It should be noted that "the range of permissible inferences that can be made from ambiguous evidence in an antitrust claim is limited." *See Bi Rite Oil Co., Inc. v. Indiana Farm Bureau Cooperative Assoc., Inc.,* 720 F.Supp. 1363, 1369 (S.D.Ind.1989)(citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). See also *Helicopter Support Systems, Inc. v. Hughes Helicopter, Inc.,* 818 F.2d 1530, 1533–34 (11th Cir.1987); *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.,* 774 F.Supp. 683, 686 (D.Mass.1991)(discussing the summary judgment standard of review in the context of section 1 of the Sherman Act).

### I. Local Rule 311.12

■ In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. (*See, e.g., Corrada Betances v. Sea–Land Service, Inc.,* 248 F.3d 40, 43–44 (1st Cir. 2001)); *Morales v. Orssleff's EFTF,* 246 F.3d 32, 33–35 (1st Cir.2001); *Ruiz Rivera v. Riley,* 209 F.3d 24, 27–28 (1st Cir.2000). This rule, which has been consistently upheld by the First Circuit[2], requires, that a party moving for summary judgment submit, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each

material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. The rule also provides that the material facts set forth in the statement provided by the moving party will be deemed admitted "unless controverted by the statement served by the opposing party." *Id.*

■ In this District, compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the parties's 311.12 statements when entertaining the movant's arguments. *See Rivera de Torres v. Telefonica de Puerto Rico,* 913 F.Supp. 81 (D.P.R.1995). Here Zanella filed an appropriate 311.12 statement in conjunction with its motion for summary judgment (Docket No. 77). However, Euromodas responded with a deficient 311.12 statement (Docket No. 86). Euromodas's statement[3] does not contain a list of contested facts, as the local rule mandates, but rather enumerates those facts in Zanella's 311.12 statement with which plaintiff disagrees. In addition, Euromodas's defective statement does not contain a single reference to the record.[4] "Parties, [like Euromodas, who] ignore [Rule 311.12, do so] at their own peril". *Velez v. Puerto Rico Electric Power Authority,* 170 F.Supp.2d 158, 162 (D.P.R.2001)(citing *Ruiz Rivera v. Riley,* 209 F.3d at 28). *See also Hogar Club Paraiso v. Varela Llavona,* 208 F.R.D. 481, 482 (D.P.R.2002). The Court, in exer-

---

**2.** Recently, the First Circuit mentioned that it was within the District Court's discretion to accept the uncontested facts submitted by one of the parties when the other party failed to comply with Local Rule 311.12. *See United Parcel Service, Inc. v. Flores–Galarza,* 318 F.3d 323, 330 n. 10 (1st Cir.2003).

**3.** Euromodas's flawed statement of contested facts (Docket No. 86) makes reference to Local Rule 311.14, a rule dealing with extensions of time.

**4.** Without specific references to the record a list of uncontested facts is worthless, given that "[t]he Court would have to continue to ferret through the record, read all the answers to the interrogatories, study all the attached documents, and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Dominguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 727 (D.P.R.1997)(citing *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930–931 (1st Cir.1983)).

cising its discretion of managing its cases, will deem as admitted the relevant uncontested facts submitted by Zanella with its motion for summary judgment given Euromodas's blatant disregard of Local Rule 311.12.[5]

## FACTUAL BACKGROUND

Zanella is in the business of manufacturing fine men's clothing, which includes trousers. Both Clubman and Euromodas carried Zanella trousers. Lazoff, another retailer not involved in this litigation, also sold Zanella products in the Puerto Rico market.

There is evidence in the record that sometime during 1996, Juan Carlos Castiel, from Euromodas, and Tom Cohen, from Zanella, had a conversation regarding Clubman's concerns about the fact that Euromodas was selling Zanella trousers at a much lower price than Clubman. (Docket No. 77, Exhibit 5.)

During 1997, Clubman brought to Zanella's attention its concerns with Euromodas's discount and marketing practices.[6] (Docket No. 77, Exhibits 1 and 2.)In a letter dated April 15, 1997, Clubman's president, Germán Ramírez, cancelled its pending order of Zanella trousers because of its dissatisfaction with the fact that Za-

nella continued to sell them to Euromodas. Clubman's alleges that this decision was fueled by the fact that Euromodas sold the Zanella pants at a lower price than Clubman, therefore affecting Clubman's image as a fine men's clothing boutique. Zanella continued to sell its trousers to Euromodas at that time. (Docket No. 77, Exhibit 4, April 23, 1997 letter).

However, there is evidence in the record that soon after Clubman expressed its discontent in writing and cancelled its order of Zanella trousers, some conversations between Zanella and Clubman resumed as to the possible creation of "Zanella corners"[7] at Clubman stores. (See Docket 84, Exhibits 1 and 3.) In fact, in a visit to New York during September of 1997, Mr. Castiel from Euromodas, was told about the fact that Clubman and Zanella were engaging in conversations pertaining to the creation of the Zanella corners. (Docket No. 77, Exhibit 6.)

On or around April 1998, Tom Cohan, from Zanella, informed Mr. Castiel, from Euromodas, that it would no longer sell him Zanella trousers after the shipment of the Spring 1998 merchandise. (Docket No. 77, Exhibit 7.) No reason was given to Euromodas for Zanella's decision.

---

**5.** The Court notes that Euromodas filed a cross-motion for summary judgment which is also pending before the Court. (Docket No. 93.) Said motion, not surprisingly, contains yet another deficient 311.12 statement. The statement lists thirty-five alleged uncontested facts, of which fifteen (15) have no reference to the record whatsoever. Of the remaining facts, more than half are misstatements of the facts contained in Zanella's original 311.12 statement and referenced thereto. This Court does not have to, and will not scavenge through the record to pinpoint the facts that would support Euromodas's arguments. Euromodas's motion for summary judgment is denied on procedural grounds. *See, e.g., Hogar Club Paraiso v. Varela Llavona,* 208 F.R.D. at 482–83. Our ruling renders unnecessary a

decision on Zanella's motion to strike Euromodas' cross-motion for failure to comply with Court imposed deadlines. (Docket No. 96.)

**6.** There is evidence in the record that Lazoff, the other retailer of Zanella trousers, had also brought to Zanella's attention the fact that Euromodas was offering them at a discounted price. (Docket No. 77, Exhibit 3.)

**7.** The "Zanella corners" was a new concept that would be introduced in the Puerto Rico market, and Zanella personnel would visit Puerto Rico and set up the corners stocking them with Zanella merchandise.

### ANALYSIS

■ "Concerted action by a manufacturer and its retailers to set or maintain the manufacturer's retail prices violates section 1 of the Sherman Act.... A manufacturer's termination of a discounting distributor, [however] in response to complaints from other distributors, is insufficient by itself to prove and illegal price-fixing conspiracy." *Garment District, Inc. v. Belk Stores Services, Inc.,* 799 F.2d 905, 908 (4th Cir.1986)(citing *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 760–64, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)(internal citations omitted)). In *Monsanto,* the Supreme Court stated that in order to create an inference of conspiracy, a plaintiff must present "something more than evidence of complaints" on the part of the competing distributors. 465 U.S. at 764, 104 S.Ct. 1464. The Court further stated that there must be direct or circumstantial evidence tending *"to exclude the possibility* that the manufacturer and nonterminated distributors were acting independently." *Id.* (Emphasis added). Additionally, the Supreme Court has stated that an agreement between a manufacturer and a dealer to terminate another dealer because it is a price cutter is insufficient to establish an antitrust violation. The violation only exists when the manufacturer and dealer *agree on the resale price* that the dealer is to charge its customers. *See Business Electronics v. Sharp Electronics,* 485 U.S. 717, 726–27, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988)(Emphasis added).

■ Here, plaintiff Euromodas has not presented evidence from which this Court could infer that Zanella and Clubman entered into a price fixing conspiracy and terminated Euromodas's distributorship in furtherance of that conspiracy. On the contrary, the evidence shows that Clubman expressed its discontent to Zanella relative to Euromodas's price-cutting practices, and utilized its position in the market to pressure Zanella. Zanella, in turn, decided at first not to succumb to Clubman's ultimatum and continued to sell its trousers to Euromodas. After several months, Zanella decided to enter into a new venture with Clubman, by creating the so called Zanella corners, and decided to terminate its relationship with Euromodas. There is nothing in this record remotely suggesting that Zanella's action of terminating its relationship with Euromodas was anything other than a perfectly legitimate independent business decision.[8] This Court cannot, as plaintiff Euromodas suggests, infer that an agreement between Clubman and Zanella to fix prices existed from the mere "existence of complaints, or even from the fact that termination came about 'in response to' complaints." *Monsanto,* 465 U.S. at 763, 104 S.Ct. 1464. The mere fact that discounting or price considerations could have had a bearing on Zanella's unilateral decision to sell only to Clubman is immaterial. *See, e.g. Garment District* 799 F.2d at 908 (finding that other dealers' adherence to suggested prices not enough to infer conspiracy and fear of losing disgruntled dealers justified termination of plaintiff); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610–615 (4th Cir.1985)(summary judgment affirmed where defendant's actions were consistent with independent marketing strategy); *Culberson, Inc. v. Interstate Elec. Co., Inc.,* 821 F.2d

---

8. In his deposition, Armando DiNatale (from Zanella), makes reference to the specific criteria underlying his decision to sell to Clubman and not to Euromodas. Namely, the proximity in location between the Clubman store and Euromodas in the Plaza Las Americas shopping mall, and the fact that Clumban had a store in the Condado area with a predominant tourist market. (Docket No. 112, Exhibit B.)

1092, 1094 (5th Cir.1987)(summary judgment affirmed where refusal to deal was consistent with independent judgment); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923–925 (2nd Cir.1985)(evidence that clothing manufacturer refused to supply discount retailer after full-price retailer announced it would no longer do business with manufacturers that supplied discount retailers insufficient to establish antitrust conspiracy); *Center Video Industrial Co. v. United Media, Inc.*, 995 F.2d 735, 736–37 (7th Cir. 1993)(no resale price maintenance found where manufacturer terminated dealer after receiving complaints from competing dealer, even though the complaining dealer's prices were raised to manufacturer's suggested price levels after plaintiff had been eliminated as a competing dealer).

The Court finds that there is simply no unambiguous evidence from which a reasonable jury could conclude that the manufacturer, defendant Zanella, illegally fixed prices through a conspiracy with one of its distributors, defendant Clubman, and that it terminated Euromodas as a dealer in furtherance of that conspiracy in violation of the antitrust laws. *See H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1016 (2nd Cir.1989)(ambiguous evidence not enough to withstand summary judgment in a section 1 Sherman Act complaint).

## CONCLUSION

In view of the aforementioned, defendant Zanella's motion for summary judgment **(Docket NO. 77)** is hereby **GRANTED.** Judgment will be entered accordingly.

IT IS SO ORDERED.